TERMINAL SHIPPING CO. et al. v. BRANHAM, Deputy Commissioner of United States Employees Compensation Commission.

No. 2569.

District Court, D. Maryland.

Nov. 5, 1942.

W. Hamilton Whiteford and Due, Nickerson & Whiteford, all of Baltimore, Md., for plaintiffs.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., and Charles T. Branham, Acting Chief Counsel U. S. Employes Compensation Commission of New York City, for respondent.

CHESNUT, District Judge.

This case turns upon the proper construction of section 44(c) (1) of the Long-

shoremen's & Harbor Workers Compensation Act (33 U.S.C.A. § 901, et seq.). 33 U.S.C.A. § 944(a) establishes a special fund for the purpose of making payments in accordance with the provisions of subsections (f) and (g) of section 8 of the Act, 33 U.S.C.A. § 908(f) and (g), which relate to compensation for disability of employes of employers generally who are subject to the Act in certain cases. Section 944(c) (1), provides:

"(c) Payments into such fund shall be made as follows: (1) Each employer shall pay $1,000 as compensation for the death of an employee of such employer resulting from injury *where the deputy commissioner determines that there is no person entitled under this chapter to compensation for such death.* Fifty per centum of each such payment shall be available for the payments under subdivision (f) of section 908 of this chapter, and 50 per centum shall be available for payments under subdivision (g) of said section." (Italics supplied.)

In this particular case the question of proper construction must also be considered in connection with the provision of section 933(c), 33 U.S.C.A. which, in dealing with compensation for injuries where third persons are liable, provides:

"(c) The payment of such compensation into the fund established in section 944 of this chapter shall operate as an assignment to the employer of all right of the legal representative of the deceased (hereinafter referred to as 'representative') to recover damages against such third person, whether or not the representative has notified the deputy commissioner of his election."

The differing constructions contended for by the respective parties can best be stated after a brief review of the particular facts involved in this case, which have been stipulated by the parties without controversy.

On June 11, 1940 James A. Thompson, while engaged in the performance of his duties as a stevedore for the Terminal Shipping Company (a stevedoring corporation) sustained fatal injuries on board the Brazilian Steamship "Camamu" while lying in navigable waters at Baltimore. While working between decks, he was walking across the hatch when the boards fell from under him precipitating him into the lower hold of the vessel. From his injury he died the same day. He was survived by his mother who claimed to be dependent on him. No other next of kin made any claim. When notified of the mother's claim, the deputy commissioner apparently treated the mother as prima facie entitled to some compensation and this was not controverted by the employer, or its insurance carrier. On July 10, 1940 the mother, Sadie Thompson, filed notice with the deputy commissioner of her election under 33 U.S.C.A. § 933 "to pursue my remedy against a third party, to wit, the owner and operator of the Steamship 'Camamu', but make claim for compensation for any deficiency between the amount so recovered and the amount provided by the said Act." On July 13, 1940 the deputy commissioner advised counsel for the employer's insurance carrier (Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company) that the claimant had made this election, and in view of that "no further action will be taken by this office until the outcome of the third party action has been concluded." Subsequently the mother as *administratrix* and individually, in due time sued the shipowner for damages in the United States District Court for the Southern District of New York, and on or about April 14, 1942 the suit was compromised and settled, without the written approval of the employer or its insurance carrier, by the payment of $8500 to Sadie Thompson for the death of her son. As this recovery was in excess of the maximum compensation under the Act, the mother made no further claim to compensation. Thereafter, the employer, its insurance carrier and the deputy commissioner entered into a stipulation containing the above recited facts on which the deputy commissioner made a determination that there was no person entitled to compensation under the Longshoremen's & Harbor Workers Act for the death of the employe, and thereupon made an award and order for the payment by the employer or its carrier of $1,000 under section 944(c), 33 U.S.C.A. In due course the employer and its insurance carrier have filed this petition for review under section 921(b), 33 U.S.C.A., which provides that the deputy commissioner's order may be set aside "if not in accordance with law".

It will be noted from this statement of facts that the employee's mother, who was the only person who ever made any claim under the Act, elected to pursue her remedy against a third person allegedly liable

(in lieu of accepting compensation under the Act), and recovered from it a sum in excess of the maximum allowance that could have been recoverable under the Act ($7500 by § 914(m), 33 U.S.C.A.); and she therefore took no further action as claimant under the Act, and filed no formal claim within the year ordinarily allowed therefor under section 913(a).

The particular phrase of section 944(c) which requires construction and application is "where the deputy commissioner determines that there is no person entitled under this chapter to compensation for such death". The deputy commissioner contends that the phrase means that no person is entitled to compensation *at the time of his determination* either (1) because the employe was survived by no dependent or (2) if survived by a dependent, the latter was not at the time of his determination entitled to compensation because no claim was filed or the claim was filed too late, or (3) because the person entitled to compensation had recovered a larger sum from a third person liable therefor. More bluntly and briefly stated, the deputy commissioner contends that in every case of the death of an employe the employer must either pay compensation or pay $1,000 into the special fund. The employer and its insurance carrier in this case contend that the proper construction of section 944(c) (1) in connection with section 933(c) is that where a claimant prima facie entitled to compensation elects to and does recover from a third person liable a larger sum than allowable compensation under the Act, the payment of $1,000 into the special fund is not authorized unless the deputy commissioner affirmatively finds as a fact that the deceased employe was not survived at the time of his death by any person who would be entitled to compensation under the Act, which affirmative finding the deputy commissioner did not make in this case.

The disputed phrase "where the deputy commissioner determines that there is no person entitled under this chapter to compensation for such death" standing alone is ambiguous with respect to the time as of which the determination is to be made, that is, as of the time of the death of the employe or at the time when the deputy commissioner makes his determination.[1] And if the ambiguity be resolved in favor of the latter point of time for cases in which no third person is liable, there remains the further question in this particular case whether that construction is permissible in view of the provision of section 933(c), 33 U.S.C.A. where a surviving dependent recovers from a third person liable a larger sum than allowable compensation under the Act.

In considering what is the proper construction there must be kept in mind some of the history of compensation acts and the legal and social philosophy which underlies them and also the general scope and procedural provisions of the Longshoremen's Act. It is well known that the Longshoremen's Act of 1927 was patterned largely upon the New York Workmen's Compensation Law, Laws 1913, c. 816, Consol.Laws N.Y. c. 67, which was the pioneer in the field of similar state statutes. It was held constitutional by the Supreme Court in New York Cent. R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1, Ann.Cas.1917D, 629. Numerous amendments have since been made in two of which we are particularly in-

---

[1] The special fund created by section 944, 33 U.S.C.A. is not for the benefit of the dependents of the deceased employe, but for certain other disabled employes of any employers subject to the Act. Not all of the state workmen's compensation statutes provide for such a fund, and of those that do a number 'express the condition on which the payment is to be made to be that the employe has left no surviving dependents. Such phraseology is not ambiguous and needs no construction. For a list of state statutes with similar provision see note to State v. Workmen's Compensation Exchange, 59 Idaho 256, 81 P.2d 1101, 1103, 1104. And see also Virginia Law Rev. Vol. 25, p. 478; and 23 Minn.Law Rev. 555. In Idaho before a recent amendment, the payment was required "in case there are no dependents of deceased employee". Laws Idaho 1921, c. 217, p. 475. Under that statute it was held that the payment was not required unless the State affirmatively showed there were no surviving dependents. And the mere fact that no claim was filed was insufficient. In re Stewart, 49 Idaho 557, 290 P. 209, 211; Williams v. Intermountain Fireworks Co., 55 Idaho 28, 37 P.2d 231. There seems to be no legislative history that throws any light upon the construction of the sections of the Longshoremen's Act here involved. See also 71 C.J., subject, Workmen's Compensation Acts, p. 907, § 636.

terested here, they being sections 15(8) and (9) which now represent amendments thereto made in 1922. Those sections in the New York law are generally comparable in purpose and phraseology to the present provision of section 944(c) (1), 33 U. S.C.A., section 44(c) (1), of the Longshoremen's Act, which itself has been held constitutional in many federal decisions of which Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, is the leading case. On familiar principles of statutory construction decisions of the New York courts construing particular provisions of the New York Act, rendered before the passage of the federal act, are generally followed by federal decisions construing similarly worded provisions of the federal statute. Metropolitan R. Co. v. Moore, 121 U.S. 558, 572, 7 S.Ct. 1334, 30 L.Ed. 1022; Hartford A. & I. Co. v. Hoage, Dep. Com'r. 66 App.D.C. 154, 85 F.2d 411, 413; Employers Liability Assur. Corp. v. Monahan, 1 Cir., 91 F.2d 130, 132; Twin Harbor S. & T. Co. v. Marshall, 9 Cir., 103 F. 2d 513, 516. The phrase in section 15(8) of the New York Act stating the condition for the payment by the employer into the special fund reads: "The employer, or if insured, his insurance carrier, shall pay into such special fund for *every* case of injury causing death *in which there are no persons entitled to compensation* the sum of $500". (Italics supplied.) In Sheehan Co. v. Shuler, 265 U.S. 371, 44 S.Ct. 548, 68 L.Ed. 1061, 35 A.L.R. 1056, and New York State Rys. v. Shuler, 265 U.S. 379, 44 S.Ct. 551, 68 L.Ed. 1064, these sections of the New York law were attacked as unconstitutional largely because they required the employer to make payments into the fund for the benefit of the employes of other employers; but the court held the provision constitutionally valid. Both these cases involved situations in which the deceased employe left no dependents. The New York Act originally contained no provision for the subrogation of the employer to recoup the payment made into the special fund from a third party liable for the employe's death. The New York courts construed the required payment as a provision imposed by statute in all cases where compensation was not *actually awarded* to a dependent. But in 1922, section 29 (Laws 1922, c. 615, Consol.Laws, c. 67) of the New York Act was amended to give the employer the right of subrogation. The amendment created a new and

special cause of action by the employer against the tort feasor which was expressed to be "in addition to any cause of action by the legal representatives of the deceased". In Phoenix Indemnity Co. v. Staten Island Rapid Transit R. Co., 224 App.Div. 346, 230 N.Y.S. 747, affirmed, 251 N.Y. 127, 167 N.E. 194, the New York courts held this statutory additional cause of action against the tort feasor valid and enforceable, and the United States Supreme Court affirmed the conclusion holding that the statute was free from federal constitutional objection. Staten Island Rapid Transit R. Co. v. Phoenix Indemnity Co., 281 U.S. 98, 50 S.Ct. 242, 74 L.Ed. 726. The facts of the case were substantially similar to those in the instant case. It will be noted, however, that section 29 of the New York Act is materially different from section 933(c) of the federal act. The former provides an *additional* cause of action in favor of the employer; while the latter merely assigns to the employer an existing cause of action.

Numerous other New York cases, some decided before and some after the passage of the federal act, have construed and applied sections 15(8) and (9) to the effect here contended for by the deputy commissioner. Thus it has been held that the payment into the special fund must be made where the deceased employe leaves surviving persons entitled to compensation if they did not in fact properly make and prosecute their claim for compensation in accordance with the procedure outlined in the statute. State Treasurer v. West Side Trucking Co., 198 App.Div. 432, 191 N.Y.S. 346; Id., 233 N.Y. 202, 135 N.E. 244. And the same result obtains where the claimant for benefits dies before an award is made. Chrystal v. United States Trucking Corp., 250 N.Y. 566, 166 N.E. 326; Barrett v. Burnett, 262 N.Y. 670, 188 N.E. 114. And the same rule has been applied where a person otherwise entitled to compensation recovers damages from a third person liable in excess of compensation. Treasurer of State of New York v. Niagara Falls Power Co., 241 N.Y. 521, 150 N.E. 538; Miller v. Rochester G. & E. Corp., 206 App.Div. 723, 199 N.Y.S. 936; Staten Island Rapid Transit R. Co. v. Phoenix Indemnity Co., supra. And in federal decisions on the Longshoremen's Act the employer has been required to make the $1,000 payment into the special fund where the widow of the deceased em-

ploye who was otherwise entitled to compensation, failed to file a claim with the deputy commissioner within the year allowed by section 913 of the Act (Employers Liability Assur. Corp., Ltd., v. Monahan, 1 Cir., 91 F.2d 130); and also where the employe was survived by his wife who, however, died within a few months before an award was made in her favor. Suckowski v. Norton, D.C.Pa., 16 F.Supp. 677.

But the only federal decision dealing with the situation that is here involved, where a dependent otherwise entitled to compensation recovers a larger sum than the amount of allowable compensation from a third party liable, is Federal M. L. Ins. Co. v. Locke, 2 Cir., 60 F.2d 895. In that case, where the facts were in all material respects similar to those of the instant case, the court held that construing section 944(c) (1), 33 U.S.C.A. in connection with section 933(c), the reasonable construction of the former section is that to make the payment obligatory the deputy commissioner must determine that there was no person entitled to compensation at the time when dependency is to be determined, that is, at the time of the death of the employe. And in this connection attention was called to section 909(f) which provides that "all questions of dependency shall be determined as of the time of the injury". The court compared section 29 of the New York law with section 933(c) of the Longshoremen's Act and noted the material legal difference in effect between the two, and therefore held the New York cases above referred to inapplicable to the proper construction of section 944(c) (1) of the Longshoremen's Act. It was pointed out that any other construction than that adopted in the particular case would render section 933(c) entirely ineffective,

and indeed would lead to very unequal and inequitable results in administration. For instance, as the opinion notes, if the person entitled to compensation recovers from the third person liable $10 less than allowable compensation, the deficiency should be awarded as compensation under the Longshoremen's Act, and in that event, on any construction, there could be no required payment of the $1,000 into the fund. Certiorari was not applied for in the Locke case. In a later case in the first circuit, Employers Liability Assur. Corp. v. Monahan, supra, it was distinguished but not disapproved. In Swofford v. International M. M. Co., 72 App.D.C. 225, 113 F.2d 179, 181, it was mentioned with possibly implied approval.

In the Locke case the court also adopted a construction of 33 U.S.C.A. § 944(c) (1) contrary to that of the deputy commissioner generally, as well as in relation to the facts of the particular case. Thus it was said [60 F.2d 896]: "Yet it seems clear that the words of section 44(c) (1) requiring the payment of $1,000 into the special fund where the deputy commissioner determines 'that there is no person entitled * * * to compensation' for the death of the employee relate only to cases where there is no such person when death occurs and when 'questions of dependency' are determined under section 9(f) of the act (33 U.S.C.A., § 909(f))." [2]

Here the deputy commissioner earnestly and elaborately argues that the Locke case was wrongly decided, but after extended consideration of the question, I have reached the conclusion that on the facts, here involved, similar to those of the Locke case, the decision was correct. If we hold that the $1,000 payment must be made whenever no award is made under the Act,

[2] On this point of the general construction of section 944(c) (1), as distinguished from the proper construction in this particular case, there is a marked and apparently equally divided difference of federal judicial opinion. In the Locke case the court of the second circuit was unanimous in reversing the view of the district judge to the contrary. In the later case in the first circuit, Employers L. A. Corp. v. Monahan, supra, Circuit Judge Morton dissented saying succintly on the point of construction: "The intention of the act clearly is that, when an employee who is accidentally killed leaves no dependents, his employer shall pay into the special fund the sum of $1,000 in the nature of a penalty. But I find no suggestion that the failure of an injured employee or his dependents to exercise their rights under the act should inure to the benefit of the United States. An intention so contrary to the general policy of all such legislation would, if it had been held, have been more clearly expressed. While the federal act was based on the New York statute, the particular provisions on this point are by no means the same. I agree with the views expressed in the opinion in the Locke case." [91 F.2d 133] In Suckowski v. Norton, supra, the district judge apparently agreed with the view of the majority in the first circuit case.

in cases *where no third party is liable,* it is apparent from section 933(c) that different considerations must apply when a third party *is liable.*

■■ Compensation acts proceed on the principle that industry should bear the economic loss where an employe is injured or killed, leaving dependents, in the course of his employment, even though the employer is not at fault; but where some third person is alone at fault, the latter and not the industry should bear the loss. Thus workmen's compensation acts commonly provide that the employe or his dependents may sue the third person liable or give subrogation to the right of action in favor of the employer who has been required to pay compensation. In the latter case it is frequently if not generally provided that the employer holds the recovery in trust to recoup his reasonable expenses and payments and the balance for the benefit of his employe or his dependents. Section 933 of the Longshoremen's Act follows this general scheme. It deals with various situations arising where a third person is liable. See Hunt v. Bank Line, Ltd., 4 Cir., 35 F.2d 136. The section enacts new legislation in matters both of substance and procedure. As the subject matter is comparatively new it is perhaps not surprising that there have been some uncertainties of application arising in particular situations. Some of these are illustrated and discussed in Chapman v. Griffith-Consumers Co. 71 App.D.C. 64, 107 F.2d 263; Aetna L. Ins. Co. v. Moses, 287 U.S. 530, 53 S.Ct. 231, 77 L.Ed. 477, 88 A.L.R. 647; Chapman v. Hoage, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370; Pacific Employers Ins. Co. v. Pillsbury, D.C., 14 F.Supp. 156, affirmed 9 Cir., 88 F.2d 443. But there is no substantial difficulty in relating the provisions of section 933 to section 944(c) (1), 33 U.S.C.A., for their effect on the construction of the latter.

■ Section 933(a) gives the primary election to sue the third person liable on account of the disability or death for which compensation is payable, to "the person entitled to such compensation". And section 944(c) (1) provides for payment into the special fund only where "there is no person entitled * * * to compensation for such death". Reading these two sections together it should be obvious that where there is a person entitled to compensation, and that person elects to sue the third person liable and recovers a larger amount than would be allowable compensation, the payment under section 944(c) (1) is not required. As was said in the Locke case: "When section 44(c) (1) required employers to pay $1,000 into the special fund in cases where there was 'no person entitled * * * to compensation', it could hardly have referred to a dependent who was entitled to compensation had she chosen to take it, but had received full satisfaction from a third person."

■ Furthermore when payment into the special fund is required, it operates [by § 933(c)] "as an assignment to the employer of all right of the 'legal representative' of the deceased * * * to recover damages against such third person, whether or not the representative has notified the deputy commissioner of his election." When the claimant expresses his or her election to sue and recovers in the suit, the right of action is, of course, exhausted, and the assignment thereof to the employer would be nugatory. It is not reasonable to infer that Congress intended to give the employer in such a case a mere vain and empty protective right of subrogation and thus in that event "to keep the promise to the ear but break it to the hope".

■ The right of action against the third person is a single and indivisible right. Obviously it cannot be exercised separately and independently both by the employe or his dependents and by the employer. The only available right of action in the situation that we are dealing with, that of a maritime tort resulting in death, in a domestic port (and not on the high seas, 46 U.S.C.A. § 761), is the right given by the Merchant Marine Act of 1920, § 33 (Jones Act) 46 U.S.C.A. § 688, to the "personal representative" of a negligently killed seaman to maintain an action for damages similar to the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, et seq. Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. In International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, a stevedore was held to be a seaman within the scope of the Jones Act. And, although the Jones Act as between employers and employes (other than the master and members of the crew of a ship) has now been superseded for maritime injuries by the Longshoremen's Act, the personal representative of the deceased employe is, in such a situation as we have here, authorized to sue the owner of the ship by whom

the employe was not directly employed. Colvin v. Kokusai K. K. K., 5 Cir., 72 F. 2d 44; Johnsen v. American-Hawaiian S. S. Co., 9 Cir., 98 F.2d 847.

By the Employers' Liability Act the right to recover damages in case of the negligently caused death of the employe is given to the "personal representative" for the benefit of "the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee". Section 1. In the Longshoremen's Act, in section 909, 33 U.S.C.A., the classes of beneficiaries entitled to compensation in the event of the death of the employe include a surviving wife or dependent husband, surviving children, dependent grandchildren and brothers and sisters, and parents or grandparents during dependency. A comparison of the classes of beneficiaries under the Longshoremen's and Employers' Liability Act shows that they are substantially but not identically the same. The mother is included among the possible beneficiaries under both statutes; but where she is the only claimant for benefits, it appears that under the Longshoremen's Act she must prove partial dependency, while under the Employers Liability Act she need prove only a reasonable expectation of pecuniary benefit from the continuance of the life of the employe. Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L. Ed. 417, Ann.Cas.1914C, 176; Moffett v. Baltimore & O. R. Co., 4 Cir., 220 F. 39; Harris v. Hoage, 62 App.D.C. 275, 66 F.2d 801, 803.

It is conceivable that the mother in this case might have been so situated with regard to her deceased son that it could be found on evidence that she was not entitled to compensation under the Longshoremen's Act, although entitled to recover under the Jones Act. But in view of the very substantial recovery she obtained in this case, there is a strong presumption that she showed such dependency on her son as would entitle her to compensation under the Longshoremen's Act. However that may be, the award made by the deputy commissioner in this case was not put upon the ground that she was not dependent, and indeed the deputy commissioner at no time took any evidence or held any hearing to determine whether the mother was a person entitled to compensation under the Act, as a surviving dependent of her son.

Possibly the commissioner would even now be entitled to hold a hearing on this specific point if he desired to do so; but no suggestion to that effect was made at the hearing, and my understanding of the submission of the case is that the point, if it exists, is waived by the deputy commissioner.

As the only right of action here existing against the third person liable is a single one, and has been exhausted by the primary right of election exercised by the only claimant, it necessarily follows that there is nothing that could be effectively assigned to the employer to give him recoupment for the $1,000 payment into the special fund, and as it is clear that it was the intention of Congress to give him this subrogated right against the third person liable, it necessarily follows that where he cannot effectively have the right, he is not required to make the payment into the special fund.

I have not failed to carefully consider the arguments of the deputy commissioner to the contrary. A distinction is attempted to be made between the instant case and the Locke case in that there the claimant was the widow and therefore presumably entitled to compensation as a dependent; while here the claim was by the mother who was not entitled to compensation unless dependency was shown. But even a widow must affirmatively show her status to be entitled to compensation and under certain conditions she may not be entitled at all where not dependent. See section 902(16), 33 U.S.C.A. Further distinction is suggested in that in the instant case the claimant could not have obtained an award for compensation under the Act in view of her recovery of a greater amount against the tort feasor. But that situation also existed in the Locke case. Neither attempted distinction is therefore real or material.

A more serious argument is based on the general nature and legal philosophy underlying the compensation acts generally and the particular provisions thereof requiring payments into the special fund such as that created by section 944 of the federal act. See Sheehan Co. v. Shuler, 265 U.S. 371, 376, 44 S.Ct. 548, 68 L.Ed. 1061, 35 A.L.R. 1056. It is said that such a provision is made an integral part of the whole statutory scheme and should be regarded as one of the primary purposes of the Act, and that the right of recoupment there-

for is merely given by the Act *for what it may be worth* in any given case, and should be regarded as an entirely subordinate provision which should not defeat the obligation to make the payment whenever an award is not actually made in favor of the beneficiary. And it is also pointed out that in the order of events under the Act the right of subrogation arises only *after* the $1,000 payment has been made by the employer.

■■ But these considerations do not meet the reasoning of the Locke case. There is here no controversy with regard to the social desirability or underlying legal philosophy of the Act; nor of the now well established legal proposition that it is to be liberally applied in favor of its general objective in providing limited but certain compensation for injured employes or their dependents. We are not here considering any constitutional objection to the Act as a whole, or to the particular provision; but merely a point of statutory construction. It is clear enough that sections 944(c) (1) and 933(c) must be read together in their application to the facts of the present case. And it is also clear on principles of statutory construction that effect should be given to both provisions rather than a construction to one which will render the other entirely nugatory. It is true that even perfect legal subrogation may practically fail if the third person liable is insolvent, and possible particular situations may hereafter exist in which the subrogation afforded by section 933(c) may be of uncertain application, for instance where the employe is survived by no next of kin entitled to compensation under the Longshoremen's Act, but where there are next of kin entitled under the Jones Act through an action by the "personal representative"; or where there are no proper beneficiaries under either Act. See Lindgren v. United States, 281 U.S. 38, 43, 50 S.Ct. 207, 74 L.Ed. 686. But this case does not present that situation, and in any event there is no just reason to adopt a construction of section 944(c) (1) that would further impair the protective feature given by section 933(c).

In this connection it should be noted that section 933(c) assigns to the employer all right of action of the "legal representative", "whether or not the representative has notified the deputy commissioner of his election". It may be uncertain whether the primary right to elect to sue is given by the statute, section 933(a), in a death case, to the legal representative, or to the beneficiary entitled to compensation, [see section 933(f)] but that is immaterial in the instant case, as it was in Ætna Life Ins. Co. v. Moses, 287 U.S. 530, 53 S.Ct. 231, 77 L.Ed. 477, 88 A.L.R. 647, because the beneficiary was also the administratrix, and she was the sole beneficiary in the present case under the Longshoremen's Act and the Jones Act. In this situation section 933(a) gave the primary right to elect the benefit of the suit against the tort feasor to the mother, either individually or as administratrix. She elected to sue, and as administratrix and individually successfully recovered, and thus exhausted the entire right of action. The contention of the deputy commissioner is that, after all this has been done, the employer must now pay $1,000 under section 944(c) (1), and be subrogated under section 933(c) to something which no longer exists. A construction of section 944(c) (1) which would produce such a result seems logically inconsistent with section 933(c). The more reasonable construction of section 944(c) (1) is to limit its operation in a case such as this to a situation where the deceased employe leaves no surviving dependent entitled to compensation who individually or through the employe's "representative" as trustee for her, has the election to sue under section 933(a). If the election is to be made by the "representative" and is so made, it seems rather repugnant to section 933(a) for section 933(c) to say that the right of action is assigned to the employer "whether or not" the "representative" has made the election. And if the election is properly to be made by the surviving dependent, it can be made fruitful only through a suit by the representative, in which event also the same phrase in section 933(c) seems inconsistent with section 933(a). On the other hand the phrase does have clarity of meaning if it is related to a case where there is no surviving dependent entitled to compensation. In that situation the employer must pay the $1,000 into the special fund, and is subrogated to "all right of the legal representative", whether or not the latter has made the election; and if the employer recovers more than his expenses and payments, he must pay the excess to the legal representative by section 933(e) (2). When the employer is thus subrogated to all right of the legal representative he simply supersedes the representative, becomes

dominus litis, and may compromise the claim against the third person [section 933 (d)]; and he may sue in his own name. Ætna Life Ins. Co. v. Moses, supra.

It is also argued by the deputy commissioner that section 933(c) is in substantial legal effect the same as section 29 of the New York law. But for the reasons already stated, that contention is untenable. It is significant that although the New York statute furnished the general model for the Longshoremen's Act, the latter departed materially from the former in the wording of section 933(c). As clearly pointed out in the Locke case, there is a very material legal difference between assigning a single existing cause of action, and the creation of a new and specific right of action in addition to an existing one. See Ætna Life Ins. Co. v. Moses, 287 U. S. 530, 53 S.Ct. 231, 77 L.Ed. 477, 88 A. L.R. 647.

██ ██ There is still another difficulty with the construction urged by the deputy commissioner in this case. To give substance to the employer's right of subrogation he must have the opportunity to sue the tort feasor with sufficient promptness to avoid the applicable bar of limitations (three years by 45 U.S.C.A. § 56 as amended in 1939); and even within the period of limitations, to avoid possible loss of evidence. Where the person entitled to compensation, or his representative, elects to sue the third person liable [section 933 (f)] and to hold the employer for any deficiency, the suit must be brought within one year and may not be compromised without the written approval of the employer [section 933(g)]. And if the plaintiff in that suit negligently prosecutes it to the prejudice of the employer, he may not thereafter hold the employer for compensation. Chapman v. Hoage, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370. But the full contention of the deputy commissioner is that the employer must pay the $1,000 into the special fund *whenever,* and apparently without time limit, the deputy commissioner determines that no person is entitled to compensation. It will be noted, however, that the condition for the payment as stated in section 944(c) (1) is not *whenever,* or even *when,* the deputy commissioner so determines, but *where.* The construction contended for would make the employer's right of subrogation practically ineffective in some cases.

My conclusion is that the award made by the deputy commissioner in this case must be set aside as not in accordance with law. The question has been submitted in this case on a motion for summary judgment made by the respondent only; but both parties have requested the court to make a final decision on the facts stipulated without a further hearing in the case. Counsel may present the appropriate order in due course.